We move on to the next item on calendar. United States v. Perez, De La Rosa and Real. And as council approach, Mr. Buehler, I understand you're gonna have 10 minutes? And Ms. Young, you're gonna have five minutes? And Ms. Ivins, right now you're not requesting any time, is that correct? Okay, and just so council knows when we split time, what I like to do is actually give Mr. Buehler's 10 minutes, you guys have agreed. I'm gonna give you a hard 10, so if you go, so you're not gonna be cutting into Ms. Young's time, Ms., you know what I'm saying, you're not gonna be cutting into Ms. Young's time. Ms. Young's not gonna want to, you know, bang a gong and pull you off the stage if you go over. So you got 10. Now if you want to cede time to Ms. Young, you're welcome to do that. I'm not sure you're gonna need to do that in this case. You probably want all 10. So with that, council, when, if you're ready to proceed, go ahead. Thank you, Your Honor. I have to please accord George Buehler appearing for defendant and appellant Joshua Perez. Your Honor, the critical issue in this case, I believe, is Mr. Perez's right to a jury trial. The case was prepared. All parties were treating the case as one that involved a sort of an incident that posed the question of whether he assaulted or whether he was acting under his right of self-defense. No one prior to, right before jury instructions, looked upon the case as involving two incidents. First, an incident involving an altercation between Mr. Perez and this officer, and then a separate incident that could be peeled off and judged separately. In other words, when the officer, Langley, Mr. Langley, got up and began to run, and Mr. Perez chased him. By saying that that latter part of the interaction between them was not one to which the self-defense instruction applied, the judge effectively directed a verdict. Because there was no aggressive action at that point by Officer Langley, and there was some, it's a little bit hard to tell on the tape, but according to Mr. Perez's testimony, he was really just wanting to make sure that the officer wasn't going to grab a weapon and turn on him. After the officer fell, and he sort of fell on top of him, he said he swung a few times, didn't hit him, then he got up and he ran. Now, given the context of what happened here, and if you look at Mr. Perez's testimony, he's been bullied, belittled, provoked, and then eventually violently thrown to the ground by the officer. And then the officer grabs his arm and keeps holding on to the arm, and finally Mr. Perez manages to pull his arm loose, and at that point the officer runs. And Mr. Perez has testified that he feared that the officer had a mace can on his belt, and feared he might also have a baton. And his instinctive reaction in the heat of the moment was to follow the officer out of a fear that the officer was trying to create a little distance and then come back at him with a weapon. Now, that happened in a matter of seconds. The question is whether it was reasonable for Mr. Perez to have that fear under those particular circumstances, and then to react the way he did by initially following the officer for his own protection. I submit that when Judge Klausner took the latter half, the latter portion of that interaction and said there's no right of self-defense there, the game was over. And it's clear the jury treated it as over because the jury didn't deliberate for maybe 30 minutes and came back. But had the jury been able to apply their judgment, their common sense, to the overall situation, not only who's telling the truth initially in the initial altercation, but whether Mr. Perez truly was acting still out of his sense of protecting himself when he followed the officer outside the gate, I believe he was. And in all events, does our Constitution not allocate to the jury the function of deciding that kind of question? So I submit that the trial judge, Judge Klausner, by withdrawing from the jury the question of whether there was a right of self-defense in the last portion, the last few seconds of the interaction, effectively directed a verdict. The jury could go back and say, well, we've got to find him guilty there, he has no right of self-defense. He chased the officer, the officer fell, he got on top of him, he admitted he took a couple swings so he didn't hit him, so therefore we have an assault and guilty verdict. I submit that that's what happened and that it violated Mr. Perez's right to a jury trial. And the case law says that the defendant's entitled to a jury instruction, entitled to the jury's decision on any issue where there is any foundation in the evidence, even though the evidence be weak, insufficient, inconsistent, or of doubtful credibility. And certainly there was some foundation in this evidence that Mr. Perez was, again in the heat of the moment, according to his version, at the end of an altercation that was started by a brutal correctional officer, there was some foundation from which a jury could have found that he was acting reasonably out of a sense of what was necessary to defend himself throughout the entire incident. Counsel, before you use up your time, I have a couple questions about the serious bodily injury enhancement. And I'm wondering, just as a preliminary matter, if you could clarify, do you agree with the government on what the basic facts are of what happened to the officers? And is your dispute about how those should be characterized under the guidelines? Or do you see there as being a disagreement about what the injuries were? For Mr. Perez, I'm only speaking for him, not for the other two defendants, and they really are separate because the other two defendants are not part of the initial altercation. They come out, they have their own interaction. But for Mr. Perez, there's a big disagreement as to what the nature of that interaction was. The government's brief is replete with accusations, claims, contentions that Mr. Perez pummeled the officer, that he struck him many times, and so forth. And on the other hand, if you look at the video, and I've tried to make that possible by enhancing it and submitting that to the court, it's clear to me that at no time can you see on the video Mr. Perez's fist or hand strike the officer. But counsel, I think the question was, what about the injuries? Say he hit him once, say he hit him ten times. Let's set that aside. What about the injuries? Do you dispute the government's contention about what those injuries were? Yes. You do contest that? And Ms. Young will be addressing that. Definitely. First of all, the... You're saying the medical records are false? I'm saying the medical records are unreliable. I'm saying you have brief references to some of the types of things that would add up to serious did not find those persuasive, found most persuasive the lack of any hard, detailed records that would indicate a serious injury. Well, just, I mean, so you're representing Mr. Perez, and Mr. Perez was found guilty with respect to the assault on Officer Langley, am I right? Yes. And Officer Langley was off from work from May 5th until late July, right? So about two and a half months. Why isn't that evidence that he suffered serious injuries? Well, I don't know how things work in the Bureau of Prisons. I don't know to what extent an incident like this is treated as a, you know, that's a good reason they did four, five, six months off. I don't know if he was going in and just reporting certain things that weren't really, really, really true. And I think that's what the probation officer was saying. I don't really have any evidence of that serious. It's a big difference in sentence. So it's not as if, you know, it's just a few more months or something. It's a big difference in the guidelines. It's not necessarily a big difference in the sentence, correct? I mean, you got a, your sentence here was well below the guidelines. Yes. But it's a big difference in the guidelines. Yes. Which I think translates into a big, still a big difference in the actual sentence. Maybe. And what is, in your view, what, by what standard, what's the standard of review for the district court's determination that there were serious injuries? Is that a factual finding that we review for clear error? I'm, I'm not on top. I didn't prepare that part of the argument that was, that was kept. That's what I should ask your co-counsel. Yes, Your Honor. Do you want to reserve a little time? Yes, I do, Your Honor.  Thank you, Your Honor. Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for the Appellant and Arreal. I'd like to reserve a minute of my time for rebuttal. And let me turn first to the issues that were just raised with my co-defense counsel. I don't know that there's any disagreement on the basic facts. If you look at the medical records over and over again, it's contusions, abrasions, and strains. That's the diagnosis. Bruises, scrapes, and stains are the diagnosis in this case. And that's what we contend does not constitute serious bodily injury. With respect to the standard of review, generally with respect to a factual finding, the standard of review would be clear error. In this case, in our sentencing, the district court did not make any factual findings. And therefore, for the case cited in our briefs, we say that it should be de novo review because there were no factual findings in my client's sentencing. Unless there's any – if I've answered that question, let me – Well, no, I guess I – I mean, so you're – I'm just trying to keep track. So Mr. Rayall pleaded guilty to assaulting both Langley and Bonilla. And I guess I'll ask the same question I asked your co-counsel about Mr. Langley, who missed two and a half months of work. And also, when I look at the guidelines, it says requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. He went to the ER and then had a number of follow-up visits with a doctor. Why – why doesn't that fit within that guideline provision? Okay. With respect to – my client pled guilty early. And the government had a theory that each defendant was responsible for the assaults on all the officers. My client bought into that theory. That theory was disapproved by the jury. The jury rejected it. So my client was the only one found guilty of assaulting both officers. And in fact, he didn't. He did not assault Langley. But with respect to Officer Langley, there's a lot of contradictions in the records. You notice that he was repeatedly cleared to return to work, and the doctor repeatedly responded to the workers' compensation adjuster, he needed more time. And in fact, in the same report, the doctor said to the workers' compensation adjuster, he's a little anxious, needs more time to recover. In that same report, the doctor's objective findings of his psychiatric condition was that his mood and affect were normal. There was no distress noted, no anxiety, no depression. So it's clear the doctor was trying to give him more time off work, even though the underlying medical condition didn't justify it. And that's why I think he was repeatedly cleared to return to work. And I also wanted to point out, with respect to the accuracy of the medical records, in one case, Officer Langley reported he'd been attacked by six or seven inmates. And we know from the video that that's not true. He was attacked by one inmate, and the government's cooperating witness may have kicked him once. But so there's a lot of exaggeration in the medical records, and I think the point of that is that Langley wanted more time. He was repeatedly cleared to return to work, repeatedly given more time by a sympathetic doctor whose internal reports were inconsistent as to the nature of his injuries. And that's why we think the district court, especially when you're talking about a 67-month difference in the guidelines, which we're contending has to be found by clear and convincing evidence, the district court had an obligation to scrutinize what exactly were the nature of these injuries. And in this case, the guidelines require that you have medical interventions such as surgery, hospitalization, or physical rehabilitation. And with respect to your comment about his treatment in the ER, that's not hospitalization, surgery, or physical rehabilitation. It's a serious difference between bodily injury and serious bodily injury. And the guidelines make it clear that it has to be a serious injury. And in this case, over and over again, you look at the medical records. All it is is contusions, abrasions, and strains. And you said a moment ago that there was no finding by the district court, but why, I mean, I agree, he didn't say very much about this. But why isn't the determination that there were, I mean, he did say, I think there were serious bodily injuries. I mean, why isn't that a finding, or at least implicitly representing a finding? In my client's sentencing, he did initially make a finding of serious bodily injury. He didn't make any factual findings to support it, which is why I'm saying that there's a de novo review as to the factual amount. But I also wanted to point out that there's a discrepancy in his findings. We know the probation officer said this is not serious bodily injury. The government recommended the application of 2A2.2, which is the higher guideline, you've got to make a separate finding of serious bodily injury, and the government said in that separate finding, this is not serious bodily injury. So the district court made inconsistent findings, which we think violates its requirement to correctly calculate the sentencing guideline range. And now I'll reserve my ten seconds for rebuttal if I may. Unless there's any further questions. We'll round way up for you to a minute. Thank you. Good morning. May it please the court. Tom Rabarczyk on behalf of the United States. I'd like to start first with addressing a couple of points made by Defendant Perez's counsel. First, there are certain facts that Defendant Perez's counsel admitted in his The first fact is Defendant Perez does not mention that there was another defendant who was also chasing Officer Langley outside the courtyard after the scuffle inside of it. That's Defendant Gonzalez. What did Defendant Gonzalez do? He peeled off and ran back to his place, his cell. What did Defendant Perez do? He proceeded and chased Officer Langley outside the courtyard. There was also no mention that on cross-examination, Defendant Perez admitted that he had a reasonable opportunity to retreat back to his cell prior to chasing Officer Langley outside the courtyard. Nor was there any mention of the fact that correctional officers within Victorville do not carry anything but mace. That was made clear during the trial testimony. Finally, as to his point about there being a directed verdict, by Defendant Perez's counsel's own admission, he says that Defendant Perez didn't hit Officer Langley outside the courtyard. So a jury could have found that he did not, in fact, commit assault. So it wasn't, in fact, a directed verdict. As to Defendant Real's assertions, I want to start with the fact that it wasn't just cuts, abrasions, and mild injuries. It was much more than that. And as it involved multiple hospital visits, not just one. Not just one on the day of, in fact. It was two on the day of for both Officers Langley and Officers Bonilla. And repeated visits to the doctors after that. For Officer Bonilla, he had two physical therapy sessions. You'll see that in CSD 11 of the record. And he also said that he, as a result of this incident, had issues with his marriage. Psychic issues that affected him moving forward. And that's found at CSD 11. That's an interesting one. Does that satisfy serious bodily injury? Bodily injury seems to exclude that type of evidence. So under the definition of serious bodily injury in the guidelines, it specifies that it's not just physical impairment, it's also mental impairment. So the government's contention here is that if you experience a psychological effect, for instance PTSD, and certain courts have found that PTSD is a factor in considering serious bodily injury, that would be the instance here. It's something analogous to that. And it doesn't just end there. I think the court also had before it trial testimony here, which makes it significantly different than the defendant's leading case, Egbert, where the victim wasn't even present in court. In fact, they couldn't even locate the victim. It was all based on testimony of other witnesses. Defendant, in fact, cites no court for reversing the serious bodily injury assertion in its briefing. Counsel, I might agree with you that there's evidence in the record from which the court could have made a finding on this, but it certainly doesn't seem like the court did. And so if we think that the standard of review is, or that the standard of proof is clear and convincing evidence, what are we to do with the lack of an explicit finding from the court on any of these facts that you're talking about now? Your Honor, this court can make any finding that's sufficient based on the record before that court. And so in this instance, that court had sufficient facts, this is the government's position, to make that finding. And he definitely made clear that he made a finding of serious bodily injury. That's clear from the record, and I can cite two of the record cites for this court if it so desires. I know that he said that. Do you consider that to be... I mean, I had this colloquy with your opposing counsel. Do you consider that to be a finding in the relevant sense, or is that an application of the guidelines to facts that weren't actually found? I think under Gascarese, Your Honor, it actually falls within that third category of the mixed fact and questions, especially since the government had raised and put forth before the court and was in the papers, it was argued at sentencing, all three sentencings, that these injuries were argued, they were articulated. So the court was justified in making that finding based on that argument before it. And it obviously made that conclusion when it said it was serious bodily injury. For instance, the court said, with respect to one of the sentencings, no question this is an aggravated assault. Then he goes on to say in that same sentencing, there was serious bodily injury to the officers and it should be punished as an aggravated assault. And that's found at government's excerpts of Record 74. That was Defendant Gutierrez. Further, it goes on and talks about, specifically in Defendant Perez's sentencing, that there's no question that there is, it resulted in pain medication having to be prescribed, cortisone shots, and that's found at Perez's excerpt of Record 41. So in this case, the court did make some findings, but more importantly, the court had before it the government's arguments concerning the serious bodily injury. Let me ask you, counsel, this is kind of an esoteric question and if you're not prepared to answer today, I understand, but the guidelines are advisory, correct? Yes, sir. And the cases that set up the clear and convincing versus preponderance were when the guidelines were mandatory, correct? That's correct. Your office filed a brief about a year ago on a case called Vera, V-E-R-A, that argued after the Beckles decision that our case law about clear and convincing and Jordan and those types of cases is just wrong and that we're the only circuit that seems to cling to this old rule. I know you didn't make an argument in your briefing in this case to say that we should overrule all of those cases in light of Beckles and if you're not, that's fine, but I'm just curious, have you thought about these issues a little bit preparing for this case? Have you come across any more thoughts as to why we are continuing to apply clear and convincing when this is all advisory anyway? Your Honor, the government actually did file in its answering brief, it did drop a footnote saying we continue to believe it's incorrectly decided. I think that's right. I think under a mandatory sentencing guideline, it makes some sense that you need a higher burden because you can't appeal. At that time, 3742, the statute that we've talked about with Evans, would have precluded your appeal if there was in fact a guideline sentence within the range. That's no longer the law. That's no longer the law of the land after Booker. So in that instance, the government does believe that it's still incorrectly decided. Is it that it's incorrect or that it's no longer binding on us as a panel? Do you think those cases have been abrogated by the Supreme Court's decisions such that we could disregard them or would that require the en banc court? Your Honor, without having reviewed Vera, I don't feel comfortable making that assessment. But it seems to me the options in this case are we just say, look, we follow Jordan and we keep moving down this road, we do a sua sante, call and bank, or we look at Miller v. Gamian and try to see if there's a way that we can say Beckles effectively overruled it. Those would be the options, I would imagine. I think that's correct, but without having further... I'm happy to present further briefings. No, no, it was a little out of the blue, but we spend a lot of time arguing about guidelines when it's all advisory. It's just, you know, there's some old cases that still require us to do some stuff I'm not sure we need to do anymore. And, Your Honor, you can keep citing to Jordan. I think the other case that's more apt in this instance is Gonzales, which this court found that even under a plain-air standard, which the defendant, Real, concedes, is our review of whether clear and convincing evidence applies, that in that instance, it was not plain-air to find the enhancement. And I think that's the case that the government would propose the court follow. Turning to just the self-defense instruction issue, I just had a couple more points. First, the standard review is plain-air. Jones v. United States makes that abundantly clear. A defendant can't lie in wait until after the jury instruction is given, especially in this case, where the defendant was made aware by the court that it was going to give this instruction. It's clear from the record, and then he waits until after the jury is excused. And Jones makes clear that that is not permissible. The cases that the defendant cite all predate Jones. Jones is the Supreme Court and is the law of the land. As for the other issues in terms of the jury instruction, there's no question that it was not objectively reasonable under the circumstances what Defendant Perez did in chasing Officer Langley outside the courtyard. He, as I said earlier, admitted he could retreat. It was 5-on-2 in that courtyard. It wasn't correctional officers outnumbering the inmates. And again, chasing a correctional officer who you think has a weapon is not objectively reasonable. It just doesn't make sense, especially as the district court found you could have retreated. As to the excessive... I know that I have not addressed the excessive intervention or bias. Does the court have any question on that issue? And then finally, with regards to the substantive reasonableness, does the court have any question with regard to that issue? I do have a question, though, about correcting the conditions of supervised release, and I wonder if you could say... We raised the question of whether a remand is required. I'd be interested in your position on that. Your Honor, I would take the same position as my colleague from my district who was just before us. Good call. I think the only thing I would add is that I think the court expressed its concerns about NERCI and the concurrence in NERCI. I think what Judge Smith was principally concerned about there was the issue of redrafting language and sort of putting a new spin on a definition of a word and then not remanding it to the district court. And that's what happened in NERCI. What the government's conceding here, as my colleague said, is we would ask for a vacating in part with a remand to the district court to amend the conditions. And in this instance, I think Defense Counsel and Defendant Rial's counsel did not and does not contest that the standard conditions that are now in place in the district court in Central District of California are not adequate to address the concerns. And so that would be the government's request. If there are no further questions... Thank you very much. Thank you. All right, you each have a minute. Not at the same time. First of all, Your Honor, several points were made by counsel. One was that the co-defendant Gutierrez did not chase after the officer. Gutierrez also did not have an altercation with the officer for 3, 4 minutes before and therefore would not have been in the same state of mind, had the same level of fear and excitement that had been created by the officer's attack on Perez. Counsel says the defendant admitted he had no reasonable opportunity to... he had a reasonable opportunity to retreat. That's objectively true. He could have gone this way instead of that way. The question was, did he have a reasonable fear that if he didn't go the way he did, he might still be subject to being attacked? The counsel also makes a point that the officers don't carry batons at Victorville. Well, the question is, whether Mr. Perez knew that. And even if they didn't, as in the ordinary course, carry a baton, maybe this officer had a baton on him. I'm sure they had batons at Victorville. Maybe this officer had one. And so for Mr. Perez to fear that, I think, is within the bounds of what a reasonable person would fear. And it's not a question of whether all of his conduct was objectively reasonable. It's a question of whether, given what he knew and what he had been through, did he have a reasonable belief at that time? Or is it clear beyond a reasonable doubt that he did not have a reasonable belief at that time that following the officer was a prudent thing for him to do? And, again, a jury should decide that question, not Judge Klobuchar. Thank you. Thanks. I just wanted to briefly respond to a few things that the government's counsel raised. Now, first of all, he said that there were multiple hospital visits. But if you look at the record, they went to the emergency room and received minor first aid and reported that he had low, moderate pain. And minor first aid does not qualify as requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. We think that minor first aid simply cannot be encompassed within the definition of serious bodily injury. He also said that Officer Bonilla had two physical therapy appointments. That was considered by the probation officer and rejected. Again, because no evidence was presented regarding it. But, again, we've discussed how the canons of construction require that when you have a term stating medical intervention such as surgery, hospitalization, or physical rehabilitation, two sessions of physical therapy simply don't amount to serious bodily injury. But, Counsel, I thought Bonilla submitted a declaration saying that he had a lot of pain in my face and the medical reports for Langley described his back and neck pain as severe. Why isn't that sufficient? They both said they had a lot of pain. I think there's inconsistent reporting due to the amount of pain. And I think that initially, in the initial medical visits, it was reported as low to moderate pain. It wasn't reported as that severe. When it came to trial and he was testifying against his attackers, that's when it became extreme pain. And I think the more reliable reporting is the contemporaneous reporting rather than when it came to trial. The opposing counsel also relied on trial testimony. Again, my client was not at trial and so it would be unfair to hold the trial testimony against him. Unless there are any further questions. Thank you. Thank you very much to all the counsel in this case. Your argument was very helpful. This matter is submitted.
judges: Owens, Nelson, Miller